UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| GLENN D. CORBIN, | CASE NO. 05-60588 |
| Debtor. | ADV. NO. 07-6097 |
| ROBERT H. CYPERSKI, | JUDGE RUSS KENDIG |
| Plaintiff, | |
| v. | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |
| GLENN D. CORBIN, | |
| Defendant. | |

This matter is before the Court *sua sponte* following the submission of the final report and account by Josiah L. Mason, the chapter 7 trustee in the main case under which this adversary arises, who is successor trustee to Robert H. Cyperski, trustee-plaintiff when this adversary was filed.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(J) and (O). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtor filed for protection *pro se* under chapter 7 of the Bankruptcy Code on February 10, 2005. He scheduled a $43,000 secured claim secured by his primary residence, a $1,167.51 priority unsecured claim for property taxes on his primary residence, and $6,200.04 in various unsecured claims, the largest of which was for $2,186.77. On March 14, 2005, the secured lender on his home moved for relief from the automatic stay to proceed against Debtor's real property; the Court granted that relief from stay on April 18, 2005.

On April 6, 2005, Trustee Cyperski filed a notice of assets and a request for notice to creditors, as well as an interim report, with the court. The interim report stated that the asset that the trustee expected to collect and administer was the non-exempt portion of

Debtor's forthcoming income tax refund, with nonexempt equity of $3,620.00. On April 9, 2005, the Court mailed the requested notice for creditors to file claims. The claims bar date was set for August 8, 2005.

The Court entered an order of discharge on May 20, 2005.

On August 8, 2005, the claims bar date passed. *No claims were filed.*

On November 20, 2006, Trustee Cyperski filed a motion for turnover of the remaining portion of Debtor's nonexempt income tax refund. According to Cyperski's motion, Debtor paid Cyperski $1,000.00 on April 29, 2005; however, he had not yet paid the remaining $2,620.00, more than eighteen months later. Debtor did not file a response, and the Court granted the trustee's motion for turnover on November 20, 2006.

Trustee Cyperski commenced the instant adversary proceeding to revoke Debtor's discharge on June 25, 2007, on the ground that Debtor still had not paid the remaining income tax refund proceeds to the trustee, and his failure to do so was now defiance of a court order. Again, Debtor did not file a response. It was not brought to the Court's attention at that time that the claims bar date had passed and no claims had been filed. Trustee Cyperski moved for a default judgment on September 11, 2007.

On September 13, 2007, Trustee Cyperski resigned from the case, and Josiah L. Mason, the current trustee, was appointed in his place.

On September 14, 2007, the Court granted ex-Trustee Cyperski's motion and revoked Debtor's discharge.

On November 10, 2008, Trustee Mason filed his final report and account in this case. The final report showed that the trustee(s) had collected $1,025.44 in assets (the $1,000.00 payment from Debtor and the interest it had accumulated over time); from these assets, Mason would distribute trustee's fees of $85.25, trustee's expenses of $5.74, $250.00 to the clerk of court for the filing fee for the adversary proceeding to revoke Debtor's discharge, and then refund to Debtor the $684.45 surplus.

## LEGAL ANALYSIS

Under 11 U.S.C. § 105(a),

[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007), quoting Grogan v. Garner, 498 U.S. 279, 286-87 (1991). The bankruptcy discharge lies at the heart of the Bankruptcy Code's "fresh start" policy. Yoppolo v. Walter (In re Walter), 265 B.R.

753, 758 (Bankr. N.D. Ohio 2001). As such, those provisions of the Bankruptcy Code which either deny or revoke a debtor's discharge are to be construed liberally in favor of the debtor and strictly against the party bringing the action. Id. Under 11 U.S.C. § 727(a)(6)(A), bankruptcy courts are to deny a discharge to a debtor who has refused to obey any lawful order of the court other than an order to respond to a material question or to testify. However,

> For purposes of § 727(a)(6)(A), a bankruptcy court, in determining whether a debtor has "refused" to obey a court order, is given a great deal of discretion. See Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751, 755 (9th Cir.1985) ("it is totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge."); In re Weir, 173 B.R. 682, 691 (Bankr.E.D.Cal.1994) (even when a debtor disobeys a court order, a court should use discretion and consider whether a denial of discharge is appropriate under all the facts and circumstances of the case).

Walter at 758.

With the benefit of hindsight, it now appears that Debtor's discharge was revoked because he only turned over to the trustee $1,000.00 to satisfy claims totaling zero, rather than turning over $3,620.00 to satisfy claims totaling zero. The largest expense the estate incurred, and the single largest line item in the proposed distribution of estate property, was the $250.00 filing fee to this Court to sue for revocation of Debtor's discharge–an adversary which was commenced after the claims bar date had passed and no claims had been received. Trustee's final report proposes to distribute $684.45 in excess estate assets back to Debtor; had Debtor complied fully with this Court's order for turnover, Debtor would simply be receiving yet more of his own money back.

Under the specific facts of this case, no purpose of the Bankruptcy Code would be served by denying Debtor his discharge; no creditors have been prejudiced because, despite the trustee's notice of assets, none filed claims. No creditor has therefore received anything less than that to which it was legally entitled. By contrast, the principal purpose of the Bankruptcy Code–giving an honest but unfortunate debtor a fresh start–would be thwarted by allowing the order revoking Debtor's discharge to stand.

An order vacating the order revoking Debtor's discharge will be entered concurrently with this opinion.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

Robert H Cyperski
Canton
1201 30th St NW
#102-B
Canton, OH 44709

Glenn D. Corbin
311 Greendale Ave
Mansfield, OH 44902

Josiah L Mason
Canton
153 W Main St
PO Box 345
Ashland, OH 44805-2219